UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

DANIEL R. GIANNINI,

       Petitioner,

      v.

FEDERAL BUREAU OF PRISONS, U.S.
DEPARTMENT OF JUSTICE,
MIKE BABCOCK, Acting Warden,
D. CANSINO, Unit Manager, G. KRUGER,
Counselor, J. MILLER, Case Manager,
Dr. HAMILTON, Drug Abuse Program
Coordinator, Dr. KREIG, Out-patient
Physician, Dr. NELSON, Clinical Director,

      Respondents.

Civil No. 09-1166 (JMR/JSM)

**REPORT AND
RECOMMENDATION**

---

This matter is before the undersigned United States Magistrate Judge on Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241[Docket No. 1] and Motion for Emergency Hearing and Appointment of Counsel [Docket No. 2]. The matter has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.

## I.    <u>FACTUAL BACKGROUND</u>

Petitioner is a federal prisoner currently incarcerated at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"). Prior to being designated to FMC-Lexington, and at the time he filed this Petition, Petitioner was incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"). Petitioner has a projected release date of April 7, 2011, via good conduct time release. Declaration of Angela Buege ("Buege Decl."), ¶ 3.

Petitioner was convicted of wire fraud and sentenced by Judge Rudolph Randa of the United States District Court in the Eastern District of Wisconsin to a 30-month term, followed by three years of supervised release.  See Buege Decl., ¶ 3, Attachment A.  As part of the Judgment and Commitment Order, Judge Randa recommended that Petitioner participate in a 500-hour drug treatment program.  Petition, Ex. B [Docket No. 1-1].  Petitioner was designated to FMC-Rochester and self-surrendered to it on February 5, 2009.  Buege Decl, ¶ 4; Pet. Mem, p. 3.

Shortly after arriving at FMC-Rochester, Petitioner requested to participate in the Residential Drug Abuse Program ("RDAP").  Upon learning that FMC-Rochester did not have a RDAP, on February 10, 2009, Petitioner requested a transfer to a facility that did offer the program.  Petition, Ex. F (Request for Administrative Remedy dated March 13, 2009).  Petitioner stated he was told by defendant Amy Hamilton that he did not qualify for a transfer because a new policy, Program Statement 5330.11, § 2.5.8,[1] effective on March 16, 2009, stated that no transfers for RDAP participation would be made if an inmate had less that 24 months remaining on his sentence.  Id.  According to Hamilton, the computer indicated that Petitioner only had 25 months remaining before his release, and she could not complete the paperwork before the new policy went into effect.  Id.  In his Request, Petitioner stated he had 29 months remaining on his sentence; he had pled guilty with the understanding that he could participate in a drug treatment program that would allow him to receive time off his sentence; not offering him the opportunity to participate in a RDAP contravened the judge's sentence; and it was unfair to change the

---

[1]     Section 2.5.8 describes the application, referral and screening processes for RDAP admission.  Petition, Ex. E.  In pertinent part, 2.5.8 states that "[u]pon assignment of a RDAP referral by the DAPC, the DTS will review an inmate's Central File and other collateral sources of documentation to determine if: there is sufficient time remaining on the inmate's sentence, ordinarily 24 months.  Id.  (emphasis added).

policy for those inmates that were "midstream through the transfer process." <u>Id.</u> Petitioner asked for a waiver of the 24-month policy. <u>Id.</u>

On March 23, 2009, Petitioner filed a motion for Modification of Sentence directed to Judge Randa. Petition, Ex. G. In the Motion, Petitioner set out how the BOP refused to transfer him to a facility with a RDAP based on the BOP's change to its RDAP policy on March 16, 2009. <u>Id.</u> Petitioner also indicated that this March 16, 2009 policy modified the sentence reduction benefits for those completing a RDAP. <u>Id.</u> Petitioner asked Judge Randa to modify his order to make the RDAP a mandatory part of his judgment and not a recommendation; the modified order be made retroactive to his original date of sentencing on October 10, 2008; and he be given the RDAP provisions and benefits in effect as of that date. <u>Id.</u> Alternatively, if the BOP did not transfer Petitioner to a facility with a RDAP, Petitioner asked Judge Randa to reduce his sentence for a period of one year to correspond to the credit he would have received had he participated in the drug treatment program and to require Petitioner to take a 9-month treatment program as part of his supervised probation. <u>Id.</u> Judge Randa rejected Petitioner's motion, stating that the decision on the placement of defendant was solely in the discretion of the BOP. <u>Petition</u>, Ex. H (Letter from Judge Randa to Petitioner dated April 1, 2009).

On March 31, 2009, Petitioner submitted to defendant Warden Michael Babcock an Inmate Request to Staff stating that Hamilton refused to transfer Petitioner to a facility with a RDAP based on the newly-enacted Program Statement 5330.11, § 2.5.8 which prohibits transfer to a RDAP if the inmate has 24-months or less on his sentence.

Petition, Ex. I. On April 3, 2009, Hamilton responded that was Petitioner's medical condition that precluded his inclusion the drug program. Id.

On April 8, 2009, Hamilton, the Drug Abuse Program ("DAP") coordinator at FMC-Rochester, determined that Petitioner did not qualify for the RDAP because she was advised by the Clinical Director, defendant Dr. Nelson, that Petitioner would remain at FMC-Rochester as a long-term patient, and accordingly, an RDAP interview with Petitioner was not conducted because he would not be transferred to a facility offering a RDAP. Buege Decl., ¶ 4; Attachment B (Notice of RDAP Qualification); Petition, Ex. J (same).

On April 10, 2009, Petitioner submitted a letter to Hamilton arguing that the refusal to transfer him to a RDAP because of his medical condition was against BOP policy[2] and was illegal because it violated the Rehabilitation Act and the American with Disabilities Act. Petition, Ex. K. On April 13, 20000, Warden Babcock responded to Petitioner's Request for Administrative Remedy previously filed on March 13, 2009, and denied the Request, stating that Petitioner was designated to FMC-Rochester to receive specialized medical care and that he was currently receiving medical care that could only be provided at FMC-Rochester. Warden Babcock noted that Petitioner was enrolled in Drug Education and he encouraged Petitioner to enroll in a nonresidential drug treatment program. Petition, Ex. L; Buege Decl., ¶¶ 5, 8. Petitioner appealed to this decision to the Regional Office. Petition, Ex. M; Buege Decl., ¶¶ 5, 8, Attachment F.

---

[2]     Petitioner cited to Program Statement 5330.11, Section 2.5.4 which states that inmates who volunteer for RDAPs and have physical disabilities or medical conditions may qualify for the RDAP "if they are otherwise eligible for the RDAP, … and [are a]ble to fully participate in *all* aspects of the RDAP." Petition, Ex. Q (emphasis in original).

After receiving the appeal, at the request of the Regional Psychology Treatment Program Coordinator, on May 18, 2009, Hamilton, the DAP coordinator at FMC-Rochester, interviewed Petitioner to determine if he was eligible for RDAP. Buege Decl., ¶ 5, Attachment C. Hamilton found that Petitioner met the diagnostic criteria for cocaine dependence, and Petitioner signed an Agreement to Participate in a BOP Residential Drug Abuse Treatment Program and an Agreement to Participate in a Community Transition Program. Id., Attachments D, E  Hamilton then submitted a Request for 3621(e) Review to the Designation and Sentence Computation Center ("DSCC") for review for eligibility for placement in a facility offering a RDAP and to review his provisional eligibility for early release. Buege Decl., ¶ 5.

The Regional Office responded to Petitioner's appeal on May 21, 1009, stating that Petitioner had been interviewed and found qualified for a RDAP; it also informed him that the medical team at FMC-Rochester believed his medical concerns were best addressed at FMC-Rochester. Buege Decl., ¶ 8; Buege Decl., Attachment F (Regional Administrative Remedy Appeal and Response). Petitioner was advised that he could participate in non-residential substance abuse treatment while assigned to FMC-Rochester, and that if the medical team determined his health would not be compromised by a transfer to a facility with a RDAP, he could participate in the RDAP. Id.

On May 28, 2009, the DSCC determined that Petitioner was eligible for a RDAP, and Petitioner was placed on the DAP waiting list. Buege Decl., ¶ 5.

On June 11, 2009, Petitioner filed an appeal to the Central Office, asking for an immediate transfer to a facility that offers a RDAP and a 1-year reduction in his

sentence upon successful completion of the program. Petitioner's Reply, Ex. A (Central Office Administrative Remedy Appeal) [Docket No. 8-2].

Meanwhile, prior to his appeal to the Central Office, on May 19, 2009, Petitioner filed the instant habeas petition, alleging that the BOP wrongfully excluded him from entry into a RDAP, and that the new sentence reduction system, which reduced the opportunity for a sentence reduction from one year to six months for inmates who had been sentenced to 30 months or less and completed a RDAP, was unconstitutional. See Petition, p. 7. By way of relief, Petitioner requested the Court: (1) order the BOP to immediately enroll him in RDAP; (2) order the BOP to immediately transfer him to an appropriate facility to participate in RDAP; (3) order the BOP to rule Petitioner eligible for a 1-year sentence reduction for completion of RDAP; (4) assess damages against Respondents for violation of Petitioner's civil rights; (5) issue a preliminary injunction prohibiting the use of the tiered sentence reduction system; (6) appoint counsel to Petitioner; and (7) order an evidentiary hearing. Pet. Mem. in Support of Petition, p. 70 [Docket No. 3]. At the same time, Petitioner filed a Motion for Emergency Hearing and Appointment of Counsel [Docket No. 2],[3] in which he sought an immediate preliminary injunction of Program Statement 5331.02.

On June 19, 2009, Respondents filed their response to the Petition and request for preliminary injunction. Gov't Response to Pet. [Docket No. 5].

On August 27, 2009, Petitioner filed a notice of change of address, informing the Court that he had been moved from FMC-Rochester to FMC-Lexington. [Docket No. 9]. After receiving Petitioner's notice of change of address, the Court determined that FMC-

---

[3]    The Court denied Petitioner's request for appointment of counsel on May 20, 2009. See Order to Show Cause [Docket No. 4].

Lexington had a RDAP. The Court then contacted counsel for Respondents in this matter, and asked counsel to determine whether Petitioner was enrolled in the RDAP at FMC-Lexington. Counsel responded to the request and informed the Court that Petitioner began participating in the RDAP at the Lexington facility in October of 2009.

Based on this information, and because it appeared as though Petitioner had achieved the relief sought in his Petition, the Court issued an Order to Show Cause as to why the Petition should not be dismissed. See Order dated January 13, 2010 [Docket No. 10]. In response, Respondents argued that the Petition should be dismissed because Petitioner received the relief he requested, and as such, the Petition was moot, and therefore, Court lacked jurisdiction over the matter. Gov't Response to Order to Show Cause, p. 2 [Docket No. 12]. Respondents also submitted that this Court had no jurisdiction over Petitioner's request for a preliminary injunction against the implementation of Program Statement 5331.02 because he never raised this issue to the BOP in his administrative remedy requests. Id., pp. 1-2 (citing Gov't Response to Pet., pp. 8-13; Petitioner's Reply, Exs. A–E.)[4] Finally, Respondents argued that Petitioner's request for injunctive relief as to the Program Statement should not be granted because Petitioner had failed to meet his burden of proof on each of the four

---

[4]     Respondents did not reference Petitioner's Inmate Request to Staff dated May 18, 2008, directed to Hamilton. See Pet. Reply, Ex. G. In this Request, Petitioner informed Hamilton that he had filed the instant habeas Petition the day before he had been informed that "Regional had reversed their prior decision to exclude [him] from RDAP," and that in this Petition he had requested judicial review of the BOP's refusal to interview him for and transfer him to a RDAP, and judicial review of the new program statement that allowed him only six months of sentence reduction. Id. Also, while Respondents referred the Court to pages 8-13 of their Response to the Petition, those pages – which did address exhaustion of remedies – did not address Petitioner's failure to exhaust his request for a preliminary injunction.

factors required for the issuance of a preliminary injunction. Id., p. 3 n.1 (citing Gov't Response to Pet., pp. 29-36).

In his response, Petitioner contended that the Petition was not moot and should not be dismissed. Petitioner claimed that although he is now participating in a RDAP, his start in the program was delayed due to violations of the BOP and therefore, because he now has insufficient time left on his sentence to obtain any sentence reduction, he will spend an extra year in prison as a result of the BOP's illegal actions. Pet. Response, pp. 1-2 [Docket No. 13]. In connection with this argument, Petitioner asked this Court fashion some sort of remedy that would compensate him for what he has lost, such as time off his sentence, time off in a halfway house, a reduction in his three years of supervised probation, or monetary damages. Id., 2. Petitioner also submitted the change in the BOP policy allowing for a sentence reduction from one year to six months remains unconstitutional, and because it affects the maximum he can receive for a sentence reduction, this issue is not moot. Id., pp. 2-3. Finally, Petitioner renewed his request for appointment of counsel, since he could not come to court. Id., p. 3

## II. REGULATORY BACKGROUND

This Petition deals with the statute providing potential sentence reductions to prisoners who complete a Residential Drug Abuse Program. Pursuant to 18 U.S.C. § 3621(b)(5), BOP "shall make available appropriate substance abuse treatment for each prisoner [BOP] determines has a treatable condition of substance addiction or abuse." Section 3621(e) offers inmates who are convicted of nonviolent offenses and successfully complete a drug treatment program, the opportunity but not the mandate

for a sentence reduction as an incentive to participate in treatment. Specifically, 18 U.S.C. § 3621(e)(2)(B) provides:

> The period a prisoner convicted of a non-violent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must serve.

(emphasis added).

Pursuant to its authority under §3621(e), and following notice and comment procedures,[5] the BOP enacted 28 C.F.R. § 550.55(c), which became effective on March 16, 2009, and set forth certain provisions for early release:

> (1) Inmates so approved may receive early release up to twelve months prior to the expiration of the term of incarceration, except as provided in paragraphs (c)(2) and (3) of this section.
>
> (2) Under the Director's discretion allowed by 18 U.S.C. 3621(e), we may limit the time-frame of early release based upon the length of sentence imposed by the Court.
>
> (3) If inmates cannot fulfill their community-based treatment obligations by the presumptive release date, we may adjust provisional release dates by the least amount of time necessary to allow inmates to fulfill their treatment obligations.

28 C.F.R. § 550.55(c) (emphasis added).

The BOP also issued Program Statement 5331.02, Early Release Procedures Under 18 U.S.C. § 3621(e), which similarly took effect on March 16, 2009, and set out a new policy for calculating an inmate's eligibility for a sentence reduction based on the prisoner's term of imprisonment. For an inmate who was sentenced to 30 months or less, Program Statement 5331.02 provided that the inmate was eligible for no more than six months of sentence reduction; an inmate sentenced to 31 to 36 months was eligible for no more than nine months' sentence reduction; and an inmate sentenced to 37 or

---

[5]     See discussion at Section III.D.1.a, infra.

more months was eligible for no more than twelve months reduction.  Program Statement 5331.02 rescinded Program Statement 5331.01, which had codified the BOP's practice of providing the early release benefit for whatever time remained on an inmate's sentence upon completion of the RDAP, so long as it was 12 months or less.  See Smith v. Thomas, 2010 WL 286766 at *1 (D.Or. Jan. 19, 2010); Gov't Response to Petition, p. 6.

## III.    DISCUSSION

### A.    Proper Parties

Where an inmate challenges the fact or duration of his confinement, a writ of habeas corpus is the appropriate remedy.  Preiser v. Rodriquez, 411 U.S. 475, 490 (1973); Archuleta v. Hedrick, 365 F.3d 644, 647 (8th Cir. 2004).  Petitioner seeks review and relief under the BOP statute regarding early release, which relates to the fact or duration of his confinement.  Thus, 28 U.S.C. § 2241 is the proper jurisdictional basis to pursue this ground of his habeas petition.

The only proper respondent in a habeas corpus petition under 28 U.S.C. § 2241 is the immediate custodian of the inmate at the time the petition is filed. 28 U.S.C. §§ 2242, 2243; Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004); Braden v. 30th Judicial Cir. Ct. of Ky., 410 U.S. 484, 495-96 (1973); United States v. Chappel, 208 F.3d 1069, 1070 (8th Cir. 2000).  For purposes of habeas petitions, the custodian of an inmate is the warden of the facility in which the inmate is confined.  Padilla, 542 U.S. at 435.  Mike Babcock, Warden at FMC-Rochester, was the custodian of Petitioner and therefore, was the proper respondent at the time this Petition was filed.  All other named Respondents should be dismissed from this action if this Petition is not dismissed as

recommended below. See Green v. Federal Bureau of Prisons, 2002 WL 32619483 at

*2 (D.Minn. Jan. 29, 2002) (dismissing all named respondents, including the Bureau of

Prisons, other than the warden).[6]

---

[6]       As noted above, since filing the Petition, Petitioner has been transferred to FMC-Lexington.  However, at the time the Petition was filed, Petitioner was incarcerated at FMC-Rochester.  It has long been established that once a court acquires jurisdiction with the initial filing of a habeas petition against a petitioner's immediate custodian in the district of the petitioner's confinement, the subsequent transfer of the petitioner and accompanying change in custody does not divest the court of that jurisdiction.  Padilla, 542 U.S. at 441; ex parte Mitsuye Endo, 323 U.S. 283, 306 (1944).  As the Supreme Court noted in Padilla:

> Endo stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.

Padilla, 542 U.S. at 441.  See also Stokes v. United States Parole Com'n, 374 F.3d 1235, 1242 (D.C.Cir.) ("if Stokes had filed his petition in the United States District Court for the Northern District of Ohio, naming the Ohio warden as the respondent, then under Endo that court would have retained jurisdiction over his petition notwithstanding Stokes's later transfer to the federal penitentiary in South Carolina where he is now incarcerated."), cert. denied, 543 U.S. 975, 125 S.Ct. 448, 160 L.Ed.2d 350 (2004)).

      "Read literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction." Braden v. 30th Judicial Circuit Court of Ky., 410 U.S. 484, 495 (1973).  See also Rasul v. Bush, 542 U.S. 466, 478-79 (2004) ("Rather, because 'the writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody,' a district court acts 'within [its] respective jurisdiction' within the meaning of § 2241 as long as 'the custodian can be reached by service of process.'") (quoting Braden, 410 U.S. at 495)); Egan v. Hawk, 983 F.Supp. 858, 860 n. 1 (D.Minn. 1997) ("In Minnesota, habeas jurisdiction continues to lie in the district in which the petitioner was incarcerated at the time that the habeas petition was filed and does not depend solely on the physical presence of the petitioner within the judicial district, as long as respondent was properly served."); Schmanke v. United States Bureau of Prisons, 847 F.Supp. 134, 136 n. 3 (D.Minn. 1994) ("[n]otwithstanding the Petitioner's transfer outside this District during the course of this action, we note the general rule that

### B. Exhaustion of Remedies

It is well-established that inmates challenging the computation or execution of their sentences through a writ of habeas corpus must normally exhaust their available administrative remedies before seeking federal habeas corpus relief under 28 U.S.C. § 2241. United States v. Tindall, 455 F.3d 885, 888 (8th Cir. 2006); United States v. Pardue, 363 F.3d 695, 699 (8th Cir. 2004); United States v. Chappel, 208 F.3d 1069, 1069 (8th Cir.2000). The exhaustion requirement for § 2241 habeas petitions is judicially created and is not jurisdictional. Lueth v. Beach, 498 F.3d 795, 797 n. 3 (8th Cir. 2007). Therefore, in rare cases, habeas petitioners have been excused from the exhaustion requirement if they can show that proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose. See Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam) ("[e]xceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action"); see also Elwood v. Jeter, 386 F.3d 842, 844, n. 1 (8th Cir. 2004) (exhaustion requirement waived based on government's concession that continued use of the [administrative] grievance procedure to contest the validity of the BOP's new policy [on CCC eligibility] would be futile"); Gonzalez v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004) (finding that a court may waive the exhaustion requirement for a § 2241 petition to prevent prejudice caused by unreasonable delay or when an agency has predetermined an

_____

habeas jurisdiction continues to lie in the District in which the prisoner was incarcerated at the time that the Habeas Petition was filed".). Accordingly, continued jurisdiction in this Court is appropriate.

issue); <u>Robinson v. Holinka</u>, 2007 WL 1054283 at *4 (D.Minn. April 29, 2007) (excusing Petitioner's failure to exhaust administrative remedies because it would be futile) (citations omitted).

The BOP provides a comprehensive and multi-tier administrative remedy procedure for federal inmates seeking to address grievances relating to their confinement, codified at Title 28 C.F.R. §§ 542.10 - 542.18. Under the BOP's Administrative Remedy Program, the inmate must first present his concern informally to an appropriate staff member, who must attempt to resolve the concern. <u>See</u> 28 C.F.R. § 542.13(a). If the issue cannot be resolved informally, the inmate must then file an Administrative Remedy Request by submitting a BP-9 form to the staff member designated by the BOP, generally the warden. <u>See</u> 28 C.F.R. §§ 542.14(a). The deadline for submitting the informal resolution and submission of the Administrative Remedy Request is "20 calendar days following the date on which the basis for the Request occurred." <u>Id.</u> If dissatisfied with the warden's response, the inmate may appeal the response to the Regional Director by filing a BP-10 form within 20 days of the date the warden signs the response. <u>See</u> 28 C.F.R. §542.15(a). If dissatisfied with the Regional Director's response, the inmate must file a Central Office Appeal with the Office of General Counsel by submitting a BP-11 form within 30 days of the Regional Director's response. <u>Id.</u> At that point, the administrative appeal process is completed and suit can then be brought. <u>Id.</u> Subject to certain exceptions, BOP regulations dictate that the warden must respond to the inmate's initial grievance within 20 calendar days; the Regional Director must respond within 30 calendar days; and the General Counsel must respond within 40 calendar days. <u>See</u> 28 C.F.R. § 542.18.

Initially, Respondents claimed that the Petition should be dismissed on grounds that Petitioner had failed to exhaust his remedies. According to Respondents, as of the date of their response to the Petition (filed on June 19, 2009), he had not yet appealed the Regional Office's response to nor received a response from the Central Office regarding his claim that he should be transferred to a facility with a RDAP. Respondents Resp. to Pet., p. 12. In his Reply, Petitioner indicated that he had filed his appeal to the BOP's Central Office on June 11, 2009. Pet. Reply, pp. 3-5; Ex. A (Central Office Administrative Remedy Appeal). In this appeal, Petitioner requested an immediate transfer to a facility that offers a RDAP and a 1-year reduction in his sentence upon successful completion of the program. While neither party subsequently apprised this Court whether the Central Office responded to the appeal, it is evident that Petitioner received part of the relief sought – ultimately, Petitioner was transferred to a facility with a RDAP and has begun the program. Thus, this Court finds that Petitioner exhausted his remedies with respect to his claim that he should have been transferred to a facility with a RDAP.

In its response to this Court's Order to Show Cause, Respondents raised for the first time the argument that Petitioner has not exhausted his administrative remedies with respect to his request for a preliminary injunction against implementation of the Program Statement. In this regard, Respondents asserted that Petitioner never raised this issue to the BOP in his administrative remedy requests. <u>See</u> Gov't Response to Order to Show Cause, p. 2.

Even if this untimely argument were properly before the Court,[7] it is rejected because exhaustion of this claim would have been futile. Having just adopted the three-tier sentencing reduction scheme set forth in Program Statement 5331.02, this Court has no reason to believe that the BOP would have changed its position regarding the validity of the Program Statement. Under similar circumstances, other courts have concluded that exhaustion is futile and have determined that the failure to exhaust is not a bar to habeas review. See Gibson v. Berryhill, 411 U.S. 564, 575 n. 14 (1973) (noting that Courts have not required the exhaustion of administrative remedies where the administrative agency had "predetermined the issue before it"); Knish v. Stine, 347 F.Supp.2d 682, 686-87 (D.Minn. 2004) (court excused failure to exhaust remedies challenging BOP policy because it would be futile) (citations omitted). Accordingly, this Court finds that Petitioner's failure to exhaust his administrative remedies as to his request for an injunction of the BOP's Program Statement, is not a bar to the Court's consideration of this portion of the Petition.[8]

---

[7] See United States v. Basciano, 369 F.Supp.2d 344, 349 (E.D.N.Y. 2005) (In a § 2241 habeas case where petitioner had not exhausted available BOP remedies, court nonetheless determined that "[s]ince the government failed to present its non-exhaustion defense in its written submission or at oral argument, I now deem that defense waived"). Additionally, this portion of the Government's response to this Court's Order to Show Cause went beyond what was requested by the Court – i.e. to address whether the Petition should be dismissed based on the fact that Petitioner appeared to have achieved the relief sought in the Petition.

[8] As a practical matter, although Petitioner did not explicitly raise in his administrative grievances his request that the three-tier sentence reduction scheme set forth in Program Statement 5331.02 be enjoined, this is not a situation where the BOP was unaware that he was challenging the legality of the Program Statement and his position that he was entitled to a one-year sentence reduction upon successful completion of the RDAP. See Petitioner's Reply, Ex. A (Central Office Administrative Remedy Appeal dated June 11, 2009) (asking for an immediate transfer to a facility that offers a RDAP and a 1-year reduction in his sentence upon successful completion of the program); Ex. G (Inmate Request to Staff dated May 18, 2008) (informing defendant

### C.    BOP's Initial Exclusion of Petitioner from a RDAP

Petitioner's first claim is that the BOP wrongfully excluded him from participating in a RDAP.  With regard to this argument, Petitioner contended: (1) if a condition for denial into the program was not stated in the governing statute and regulations, it was impermissible for the BOP to deny an inmate admission for that reason; (2) the BOP's refusal to allow Petitioner to participate in a RDAP based on his medical condition was a violation of his Equal Protection rights; (3) the BOP violated Petitioner's due process rights by refusing to qualify Petitioner for the program; 4) the Rehabilitation Act of 1973 forbids the BOP from excluding an inmate from the program; 5) the BOP's denial of access to a RDAP violated Petitioner's civil rights under the Americans with Disabilities Act; (6) the BOP was estopped from enforcing the new Program Statement where it inappropriately utilized the 24-month benchmark to deny Petitioner the right to interview for RDAP; (7) the BOP must immediately transfer an inmate where the BOP did not follow the five factors of imprisonment placement set forth in 18 U.S.C. § 3621(b); (8) habeas corpus should be granted when the BOP wrongfully delayed performing its duty to process Petitioner's request to be placed into RDAP; and (9) the BOP's refusal to interview Petitioner deprived him of a protected right.  Petition, pp. 7-9.

Article III of the United States Constitution limits the jurisdiction of federal courts to deciding "cases" and "controversies." U.S. Const. art. III; Allen v. Wright, 468 U.S. 737, 750 (1984). "A case that no longer presents a live case or controversy is moot, and a federal court lacks jurisdiction to hear the action."  Keating v. Nebraska Public Power Dist., 562 F.3d 923, 927 (8th Cir. 2009) (citation and marks omitted). "This means that,

Hamilton that he had filed the instant habeas Petition in which he had requested among other relief, judicial review of the new program statement that allowed him only six months of sentence reduction).

throughout the litigation, the [petitioner] must have suffered, or be threatened with an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision." Spencer v. Kemna, 523 U.S. 1, 7 (1998) (internal quotations omitted). Thus, if during the litigation intervening circumstances occur that render a court unable to grant the requested relief, then the case becomes moot, and court loses jurisdiction to hear the case. See Calderon v. Moore, 518 U.S. 149, 150 (1996).

The Court finds that Petitioner's first claim is moot. As set forth in the factual background, Petitioner was transferred to a facility offering a RDAP and has been enrolled in the RDAP since October of 2009. Accordingly, the Court finds that insofar as the Petition is based on the BOP's refusal to allow Petitioner to interview for RDAP, refusal to transfer Petitioner to a facility offering RDAP, or refusal to enroll Petitioner in RDAP, Petitioner has achieved the relief he sought by filing the Petition and is currently participating in the program. There is no case or controversy before the Court with regard to Petitioner's first claim, and consequently, the claim is moot.

Nevertheless, in order to overcome the possibility that this Court might dismiss this first claim, Petitioner contended that it was not moot because this Court could fashion a remedy for the BOP's violations that would compensate him for the delay in his start in the RDAP, such as time off his sentence, time off in a halfway house, a reduction in his three years of supervised probation, or monetary damages. Pet. Response, p. 2.

Under federal habeas corpus law, the sole remedy that is available is the immediate or expedited release of a prisoner unconstitutionally convicted or sentenced. Preiser v. Rodriguez, 411 U.S. 475, 493 (1973). See also Muhammad v. Close, 540

U.S. 749, 750-51 (2004) (damages are not relief available in a habeas action); Nelson v. Campbell, 541 U.S. 637, 643 (2004) (claims where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence "fall within the 'core' of habeas corpus…By contrast, constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core…"); Campbell v. Fondren, 2009 WL 2982931 at *1 (D.Minn. Sept. 14, 2009) ("[m]oney damages are not available as a remedy under section 2241. In a petition in which habeas relief is the primary objective, the request for money damages may be disregarded as mere surplusage.") (citations omitted). Therefore, Petitioner's claim for monetary damages cannot be entertained because they cannot be sought in a habeas corpus petition.

With respect to Petitioner's request for time deducted from his sentence, halfway house placement, or supervised probation, the Court cannot provide Petitioner with this relief because Petitioner's allegation that the BOP violated his rights by delaying his entry into a RDAP is without merit. Relief under § 2241 cannot extend to a prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

"'[T]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.'" Egan v. Hawk, 983 F.Supp. 858, 864 (D.Minn.1997), quoting Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979); see also Trobaugh v. Hawk, 19 Fed.Appx. 461, 462 (8th Cir. 2001) (noting that "Section 3621(e) creates no protected liberty interest in receiving a sentence reduction") (citation omitted); Richardson v. Joslin, 501 F.3d 415, 420 (5th Cir.

2007) ("The grant of discretion to the BOP in § 3621(e)(2)(B) indicates that no entitlement and, hence, no liberty interest, was created."); Dozier v. Daniels, 139 Fed.Appx. 902, 903 (9th Cir. 2005) (noting that prisoners have "no liberty interest in the discretionary sentence reduction available under 18 U.S.C. § 3621(e)(2)(B).").

Further, "[w]hen an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." Lopez v. Davis, 531 U.S. 230, 241 (2001). See also Sandin v. Connor, 515 U.S. 472, 487 (1995) (possibility of early release is not a liberty interest); Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000) (language of statute allowing early release upon completion of treatment program is permissive and does not guarantee eligible inmates early release). Accordingly, "[n]o fundamental right attaches to a discretionary privilege such as a reduction in the term of sentence." Stanko v. Cruz, 2008 WL 4849025 at *2 (D.Minn. Nov. 6, 2008).

In sum, where, as here, there is no protected interest in early release, there can be no violation of Petitioner's Constitutional rights.[9]

Finally, the Court observes that the relief sought by Petitioner with respect to his sentence is premised on his successful completion of RDAP, which is entirely speculative at this point. The Court does not know if Petitioner will complete the RDAP, or if he does, that he will be awarded a sentence reduction, and if so, how much of a

---

[9]     For the same reasons, Petitioner's allegations that the BOP's actions violated the ADA or the Rehabilitation Act of 1973 must also fail. See Green v. Bureau of Prisons, 2002 WL 31548084 at *3 (D.Minn. Nov. 12, 2002) (Where petitioner alleged that RDAP violated the ADA and Rehabilitation Act of 1973, court determined that "[e]arly release pursuant to § 3621(e) is entirely at the Bureau of Prisons' discretion. Therefore, the very premise of Green's disability discrimination allegations is faulty; the statutory provisions he cites give him no liberty interest that can be discriminatorily denied, even if he is a qualified person with a disability.").

reduction he will receive. In any event, even if the Court could be assured that Petitioner will complete the RDAP, it is the BOP, and not the Court, that is in the best position to assess any reduction in sentence. See Robinson v. Holinka, 2007 WL 1054283 at *8 (D.Minn. Apr. 9, 2007) (to the extent Petitioner argued that court should direct the BOP to reconsider his eligibility for a sentence reduction, "we conclude that the BOP is uniquely qualified, in the first instance, to make decisions as to the propriety, as well as the timing, of eligibility determinations for sentence reductions, pursuant to the RDAP program").

For all of these reasons, this Court concludes that Petitioner's first claim is moot and should be dismissed.

**D.      The Enforceability of 28 C.F.R. § 550.55(c)(2) and Program Statement 5331.02**

Petitioner's second claim is that 28 C.F.R. § 550.55(c)(2) and BOP Program Statement 5331.02 are unenforceable. To that end, Petitioner argued: (1) the tiered sentence reduction system set forth in Program Statement 5331.02[10] is a legislative and substantive rule requiring notice and comment procedures under the Administrative Procedures Act; (2) Program Statement 5331.02 and 28 C.F.R. § 550.55(c)(2) are not a well-reasoned interpretation of 18 U.S.C. § 3621(e)(2)(B) and are therefore, invalid because they exceed the BOP's authority; (3) the BOP's policy violates the Ex Post Facto clause of the Constitution, where Petitioner was sentenced prior to the effect date of 28 C.F.R. § 550.55(c)(2) and Program Statement 5331.02, and their policies operate

---

[10]      Petitioner referenced 28 C.F.R. § 550.55(c)(2) in this argument, (Petition, p. 9), but the Court assumes he meant to refer to Program Statement 5331.02. While 28 C.F.R. § 550.55(c)(2) does state that the BOP "may limit the time-frame of early release based upon the length of sentence imposed by the Court," it does not mention a tiered system. See also Pet. Mem., p. 38.

retroactively to render his sentence more punitive; (4) 28 C.F.R. § 550.55(c)(2) violates the Equal Protection Clause because it treats similarly situated persons dissimilarly and there is no rational basis for the classification; and (5) the Court must issue a preliminary injunction where the BOP has issued a Program Statement that exceeded its authority and the Petitioner has satisfied the requirements for a preliminary injunction.  Petition, pp. 9-10.  The Court finds that this second claim was not resolved by Petitioner's acceptance into and current participate in a RDAP, and accordingly, it will address the claim on its merits.

       **1.**    <u>**APA**</u>

Subject to limited exceptions, the APA requires that an agency, including the BOP, give notice of a proposed rule, and provide at least a thirty-day period for public comment, before that rule is given effect.  <u>See</u> 5 U.S.C. § 553; <u>see</u> <u>also</u> <u>United States v. DeLeon</u>, 330 F.3d 1033, 1036 (8th Cir. 2003) ("The APA's rulemaking provisions require three steps to enact substantive rules: notice of the proposed rule, a hearing or receipt and consideration of public comments, and the publication of the new rule.").  The exceptions include "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."  5 U.S.C. § 553(b)(A).

Petitioner argued that neither 28 C.F.R. § 550.55(c) nor Program Statement 5331.02 were promulgated in accordance with the notice and comment requirements of the APA, and are therefore invalid.

The Court concludes otherwise – the 28 C.F.R. § 550.55(c) did undergo the proper notice and comment period required by the APA.

The portion of 28 C.F.R. § 550.55(c) at issue states as follows: "Under the Director's discretion allowed by 18 U.S.C. § 3621(e), [the BOP] may limit the length of reduction in sentence based upon the length of a sentence imposed by the Court." 28 C.F.R. § 550.55(c)(2). This provision was added to a proposed version of the regulation on July 1, 2004, with comments due by August 30, 2004 – "In the new § 550.55(c)(2), we add new language explaining that, under the Director's discretion allowed by 18 U.S.C. 3621(e), we may limit the amount of reduction in sentence based upon the length of sentence imposed by the Court." Proposed Rules, 28 C.F.R. Part 550, 69 FR 39887-02, 2004 WL 1466970 (July 1, 2004). The BOP received and reviewed public commentary on the proposed rule. See 74 FR 1892-01, 2009 WL 76657 (Comments on the 2004 Proposed Rule) (Jan. 14, 2009). 28 C.F.R. part 550 was finalized on January 14, 2009, and became effective on March 16, 2009. Id..

The BOP gave proper notice of the proposed version of 28 C.F.R. § 550.55(c)(2), and provided 60 days between July 1, 2004 and August 30, 2004 for public comment before the rule was given effect. Therefore, the Court finds that 28 C.F.R. § 550.55(c)(2) was properly enacted pursuant to the APA's notice and comment requirements.

As for the enactment of Program Statement 5331.02, Program Statements issued by the BOP do not have substantive effect, but instead are used to clarify or explain other laws and regulations. McKenzie v. Bowen, 787 F.2d 1216, 1222 (8th Cir. 1986). As such, Program Statements are generally exempt from the notice and comment requirements of the APA. See 5 U.S.C. § 553(b)(A) (exempting "interpretative rules, general statements of policy, or rules of agency organization, procedure, and

practice"); Reno v. Koray, 515 U.S. 50, 61 (1995) (describing a BOP Program Statement as an "internal agency guideline . . . akin to an 'interpretive rule' that 'do[es] not require notice and comment'") (quoting Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 99 (1995)); Gunderson v. Hood, 268 F.3d 1149, 1155 (9th Cir. 2001) (finding Program Statements are not subject to the APA's notice and comment requirements); Royal v. Tombone, 141 F.3d 596, 600 (5th Cir. 1998) (same) (citation omitted); Johnson v. Holinka, 2007 WL 1446476 at *4 (D.Minn. May 14, 2007) (finding that Program Statement was is "an interpretive rule that is exempt from the notice and comment requirements of the APA."). On this basis, the Court concludes that Program Statement 5331.02 was exempt from the APA's notice and comment requirements.

Petitioner next asserted that the tiered sentence reduction system promulgated by Program Statement 5331.02 and § 550.55(c) was a legislative or substantive rule because its practical effect was to alter § 3621(e)(2)(B). Pet. Mem., p. 43. The Court disagrees. Prior to the enactment of Program Statement 5331.02, Program Statement 5331.01 governed the BOP's practice of providing the early release benefit for those inmates who completed a RDAP. Program Statement 5331.01 permitted release for whatever time remained on an inmate's sentence, so long as it was 12 months or less. See Smith, 2010 WL 286766 at *1; Gov't Response to Petition, p. 6. Like the previous version, Program Statement 5331.02 still allows for the sentence reduction of up to one year as provided by § 3621(e)(2)(B), but now specifies which prisoners may receive a full or partial reduction.

"While the BOP retains discretion to promulgate additional requirements for sentence reduction eligibility, it cannot defy the plain language used by Congress."

Egan v. Hawk, 983 F.Supp. 858, 864 (D.Minn. 1997).  Here, the BOP was given the authority to limit the time-frame for early release under 28 C.F.R. § 550.55(c)(2), and the Program Statement 5331.02 simply detailed which prisoner is eligible for what amount of early release based on their sentence.  The sentence reduction system put in place, via 28 C.F.R. § 550.55(c)(2) and Program Statement 5331.02, does not alter § 3621(e)(2)(B), but rather merely implements the language with further precision.

In the same vein, Petitioner also argued that the tiered sentence reduction system set forth in 28 C.F.R. § 550.55(c)(2) and Program Statement 5331.02 was not a well-reasoned interpretation of § 3621(e)(2)(B) and was invalid because it exceeded the BOP's authority.  Pet. Mem., p. 47.  The Court finds otherwise.

28 C.F.R. § 550.55 is a federal regulation outlining the exercise of BOP discretion under 18 U.S.C. § 3621(e)(2)(B).  Judicial review of administrative action is governed by the APA.  In re Sac & Fox Tribe of Miss. In IA./Meskwaki Casino Litig., 340 F.3d 749, 755 (8th Cir. 2003).  When a statute unambiguously expresses the intent of Congress, the agency must give effect to that intent.  Chevron U.S.A. Inc. V. Natural Res. Def. Council, 467 U.S. 837, 842-43, 104 S.Ct. 2778 (1984).  On the other hand, when Congress has left discretion for agency action, the agency's interpretation is entitled to substantial deference under Chevron.  United States v. Mead Corp., 533 U.S. 218, 121 S.Ct. 2164 (2001).  In the Eighth Circuit, Chevron deference means the agency's interpretation is given controlling weight unless "arbitrary, capricious, or manifestly contrary to the statute."  In re Old Fashioned Enters., Inc., 236 F.3d 422, 425 (8th Cir. 2001).

Section 3621(e)(2)(B) expressly gives the BOP discretion to reduce an inmate's period of custody up to one year upon the successful completion of the RDAP. Bellis v. Davis, 186 F.3d 1092, 1094 (8th Cir. 1999) (18 U.S.C. § 3621(e)(2) vests broad discretion in the BOP to determine which individuals are appropriate candidates for early release); see also Grover v. Federal Bureau of Prisons, 245 F.3d 743, 747 (8th Cir. 2001) ("The BOP retains broad discretion to determine who among those statutorily eligible inmates are appropriate candidates for early release.") (citing Bellis at 1094-95; United States v. Lopez-Salas, 266 F.3d 842, 848 (8th Cir. 2001) (the BOP had discretion to "categorically exclude inmates who have had INS detainers filed against them from eligibility for early release after completing the treatment program."); Boucher v. Lamanna, 27 Fed. Appx. 279, 281 (6th Cir. 2001) ("Furthermore, the BOP director has discretion to establish additional criteria that an inmate must satisfy in order to obtain early release under § 3621(e)(2)(B)."). However, "[b]eyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so." Lopez, 531 U.S. at 242. Accordingly, "all [this Court] must decide is whether the [BOP], the agency empowered to administer the early release program, has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" Id. (quoting NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 257, 115 S.Ct. 810 (1995)). As discussed next, this Court finds that the BOP has appropriately filled the statutory gap.

Petitioner argued that the length of an inmate's sentence has no rational connection to their success in drug rehabilitation, that the length of an inmate's sentence is not a reasonable basis to reduce early release, and that the reduction system does not create an incentive for an inmate to participate in a RDAP. Pet. Mem., pp. 48-50. In fact, the BOP expressly addressed these concerns in its comments to the proposed rule 28 C.F.R. § 550.55(c)(2):

> One commenter recommended that the Bureau should, instead of giving a year off, award time off up to a year based on the inmate's level of dedication to their sobriety, as determined by a council consisting of the local DAP Coordinator and specialists.
>
> In fact, we award time off of "up to" a year, based on several factors, including the inmate's level of dedication to sobriety. Title 18 U.S.C. 3621(e)(2)(B) gives the Bureau the discretion to reduce the period of incarceration for an inmate who successfully completes the drug abuse treatment program, but "such reduction may not be more than one year." In § 550.55(c), we have chosen to exercise this discretion by awarding early release based on successful completion of the program, the length of sentence imposed by the Court, and fulfillment of the inmate's community-based treatment obligations by the presumptive release date.
>
> In § 550.55(c)(2), we add language explaining that, under the Director's discretion allowed by 18 U.S.C. 3621(e), we may limit early release based upon the length of sentence imposed by the Court. We add this provision to adhere to the Court's intent in determining the length of the sentence. <u>An early release of a substantial period of time (e.g., twelve months) for relatively short sentences would diminish the seriousness of the offense and unduly undercut the sentencing court's punitive intent, as manifested in the length of the sentence imposed.</u>

74 FR 1892-01, 2009 WL 76657 (Comments on the 2004 Proposed Rule) (Jan. 14, 2009) (emphasis added).

The Court finds this reasoning to be both rational and reasonable. It is a valid concern that a substantial reduction in the short sentences of offenders would undermine the intent of sentencing courts. If an inmate who was serving 30 months

received the full 12-month sentence reduction, their sentence would be reduced by nearly half, and greatly diminish the punitive impact of the original sentence. Basing the reduction on the length of an offender's sentence is a fair and reasonable approach for incentivizing inmates to participate in a RDAP, while at the same time, taking into account the punitive goals of the sentence. Accordingly, the Court finds that 28 C.F.R. § 550.55(c)(2) is a reasonable and permissible interpretation of § 3621(e)(2)(B).

The Court also concludes that Program Statement 5331.02 is a reasonable and persuasive interpretation of 18 U.S.C. § 3621 (e)(2)(B) and 28 C.F.R. § 550.55(c)(2), and is entitled to deference. [11]

The underlying statute, 18 U.S.C. § 3621(e)(2)(B), and implementing regulation, 28 C.F.R. § 550.55(c)(2), do not supply any particular method for arriving at the amount of early release that should be awarded to inmates who successfully complete RDAP. The Program Statement merely supplies the specific parameters limiting early release based upon the length of sentence imposed by the Court as authorized by § 550.55(c)(2). The Program Statement offers a rational means for calculating the sentence reduction, by setting forth incremental increases, beginning with a prisoner's

---

[11]    "Where an agency sets forth its own interpretation of statutory language in internal policies, and those interpretive rules have not been subject to public notice and comment under the Administrative Procedure Act, a court need not grant the rules substantial deference." Raymer v. Cruz, 2009 WL 1924773 at *3 (D.Minn. July 2, 2009) (citing Saint Mary's Hosp. v. Leavitt, 535 F.3d 802, 807 (8th Cir. 2008); In re Old Fashioned Enters., Inc., 236 F.3d 422, 425 (8th Cir. 2001)). "So in the absence of more formal agency action, interpretive rulings only receive deference equal to their power to persuade." Raymer, 2009 WL 1924773 at *3 (citing Godinez-Arroyo v. Mukasey, 540 F.3d 848, 850-51 (8th Cir. 2008); Clark v. Dep't of Agriculture, 537 F.3d 934, 939-40 (8th Cir. 2008)). Because the Program Statement has not been subject to public notice and comment, this less deferential standard applies here. Hawk, 983 F.Supp. at 861).

sentence of 30 months or less, and increasing the amount of early release proportionally for longer sentences.

For all of these reasons, this Court finds that both 28 C.F.R. § 550.55(c)(2) and Program Statement 5331.02 were enacted in accordance with the operative provisions of the APA and are reasonable and consistent with 18 U.S.C. § 3621(e)(2)(B). Accordingly, the Court does not find that the BOP exceeded its authority in enacting 28 U.S.C. § 550.55(c)(2) or Program Statement 5331.02.

## 2. Ex Post Facto Clause

Petitioner contended that the sentence reduction policy set forth in 28 C.F.R. § 550.55(c)(2) and Program Statement 5331.02 violates the Ex Post Facto clause of the Constitution because he was sentenced prior to the policy taking effect, and the policy operates retroactively to make his sentence more punitive. Pet. Mem., p. 54.

"To fall within ex post facto prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment – and it 'must disadvantage the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime." Zacher, 202 F.3d at 1045 (quoting Lynce v. Mathis, 519 U.S. 433, 441 (1997).

In Zacher, the Eighth Circuit upheld a BOP Program Statement that was amended to state explicitly that certain past crimes disqualified inmates from early release whether they were misdemeanors or felonies. 202 F.3d at 1045. In so doing, the court stated that "the [BOP] was not changing the law in this particular respect. It was at the most clarifying what was already contained in the original regulation and Program Statement. Amendments to a regulation that merely clarify preexisting law are

not subject to the various Constitutional limits on retroactivity that Zacher invokes." Id. The same is true here – 18 U.S.C. § 3621(e) states that inmates could be eligible for up to one year of early release;  28 C.F.R. § 550.55(c) states that the BOP may limit the amount of reduction in sentence based upon the length of sentence imposed by the Court.  Program Statement 5330.10 merely sets forth the specific amount of reduction in sentence based upon the length of the sentence imposed, thereby clarifying the preexisting regulations.

As to Petitioner's assertion that the new policy change rendered his sentence more punitive, that is not true.  Petitioner's actual sentence has not increased.  Instead, under the new policy he is simply no longer eligible for a longer amount of discretionary early release.  See Grove, 245 F.3d at 747 ("Grove was not subject to any increased liability or new duties by the BOP's decision to alter its own discretionary policy rules because he had no entitlement to an early release and had done nothing to preserve his right to a determination under the old policy — Grove had neither entered nor completed the treatment program prior to the enactment of the new regulation. Absent any such action in reliance on the old policies, Grove's claim of retroactivity must fail."); Yates v. Sherman, 2007 WL 2022094 at *5 (W.D.Pa. July 10, 2007) ("the regulation at issue did not increase the penalty for Petitioner's offense; rather, it merely deprived him of an opportunity to take advantage of a discretionary early release provision. Consequently, no ex post facto violation occurred."); Seacrest v. Gallegos, 30 Fed.Appx. 755, 756 (10th Cir. 2002) (the BOP did not violate the Ex Post Facto clause because the decision to exclude inmate from early release consideration did not affect the legal definition of the crime [inmate] committed or increase his punishment.").

In his supporting memorandum, Petitioner relied upon the decision of <u>Castellini v.</u> <u>Lappin</u>, 365 F.Supp.2d 197 (D.Mass. 2005), in which an inmate claimed that termination of the prison's boot camp program violated the Ex Post Fact clause. Pet. Mem., p. 55. The District of Massachusetts agreed, finding that the policy violated the Ex Post Facto clause because the elimination of the program was retroactively applied to prisoners who were sentenced with a boot camp recommendation before public notice of the termination of the program. <u>Id</u>. at 204. However, some courts have noted that <u>Castellini</u> does not carry much persuasive weight due to the fact that the case was later dismissed. <u>See</u> <u>Serrato v. Clark</u>, 486 F.3d 560, 571 n. 8 (9th Cir. 2007) (where the prisoner had only a recommendation by a judge that her eligibility for a discretionary program be evaluated and had not yet earned any early release privileges when she was informed that the program had been terminated, the court concluded the program termination did not alter the definition of criminal conduct or increase the prisoner's punishment for the crime within the meaning of the Ex Post Facto Clause); <u>Fason v.</u> <u>Sanders</u>, 2005 WL 2897041 at *7 (E.D.Ark. Nov. 3, 2005) (noting that <u>Castellini</u> had been criticized because the proceeding was dismissed before a final judgment was entered).

In <u>Fason</u>, after analyzing <u>Castellini</u>, the court chose instead to follow the holding of <u>United States v. McLean</u>, 2005 WL 2371990 at *4 (D.Or. Sep. 27, 2005), in which the court held that the BOP's decision to terminate a boot camp program did not violate the Ex Post Facto clause because the prisoner had not been accepted into the program. 2005 WL 2897041 at *7. Like <u>McClean</u>, the <u>Fason</u> court ultimately found that there was

no violation of the Ex Post Facto clause because Fason was never provisionally accepted into the program.  Id.[12]

Applying the reasoning in Fason and McLean to the instant case, although Petitioner requested entry into a RDAP in February of 2009, he was not even provisionally accepted into RDAP until May of 2009, two months after Program Statement 5331.02 and 28 C.F.R. § 550.55(c) became effective.  Therefore, he had no basis for arguing entitlement to a sentence reduction of one year.  For these reasons, the Court finds that no Ex Post Facto violation occurred here.

### 3.    Equal Protection Clause

Petitioner's final argument with respect to the tiered sentence reduction system is that it violated the Equal Protection Clause because it treats similarly situated persons dissimilarly without a rational basis for the classification.  Pet. Mem., p. 60.  By way of

---

[12]      In comparison to these cases, the Court notes that where an inmate had already been provided with a determination of the amount of sentence reduction for which he was eligible and then the rule changed, courts have found that the rule change violated the Ex Post Facto doctrine.  For example in Bowen v. Hood, the Ninth Circuit concluded that the BOP had impermissibly applied rule changes excluding a group of inmates from early release eligibility in violation of the retroactivity doctrine where the inmates had already been provided with a determination of eligibility prior to the date the amended regulation became effective.  202 F.3d 1211, 1222 (9th Cir. 2000).  Similarly, in Smith v. Thomas, the district court addressed the BOP's implementation of Program Statement 5331.02, the same program statement at issue here.  2010 WL 286766 at *1 (D.Or. Jan. 19, 2010).  In Smith, the BOP notified the petitioner who was serving a 29-month sentence, that he was eligible for a sentence reduction of up to one year, and then changed its rules to render the petitioner ineligible for the maximum one-year sentence reduction.  Id. at *2.  Relying on Bowen, the court found that "petitioner developed a reasonable, settled expectation that he was eligible for a sentence reduction of up to one year at the moment BOP notified him that he was eligible for RDAP on February 4, 2000."  Id. at *3.  It concluded that the "BOP impermissibly disrupted those settled expectations when it implemented a policy that retroactively disqualified petitioner from eligibility for a one-year sentence reduction, after BOP had already notified petitioner of his eligibility for such a reduction."  Id. at *3.  Neither Bowen nor Smith have application here, where Petitioner had not been accepted into a RDAP or been provided a determination that he was eligible for a sentence reduction of up to one year.

example, Petitioner asserted that an inmate with a 29-month sentence and an inmate with a 31-month sentence are similarly situated, yet they are treated differently because they each are eligible for a different amount of early release.  Id., p. 62.

"The Equal Protection Clause generally requires the government to treat similarly situated people alike."  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, (1985).  This protection applies to prison inmates.  See Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 984 (8th Cir. 2004), citing Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999).

The first step in an equal protection case is determining whether Petitioner has demonstrated that he was treated differently than others who were similarly situated to him.  See Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994), cert. denied, 513 U.S. 1185 (1995). (citation omitted).  "Dissimilar treatment of dissimilarly situated persons does not violate equal protection."  Id. (citation omitted).  "The similarly situated inquiry focuses on whether the [claimant is] similarly situated to another group for purposes of the challenged government action."  Id.  (citation omitted).  Absent a threshold showing that he is similarly situated to those who allegedly receive favorable treatment, Petitioner does not have a viable equal protection claim.  Id.  (citation omitted).  "He also must show intentional or purposeful discrimination."  Phillips v. Norris, 320 F.3d 844, 848 (8th Cir. 2003) (citing Klinger v. Dep't of Corr., 31 F.3d 727, 733 (8th Cir. 1994)).

Assuming that a petitioner can meet this threshold showing, then the Court examines the regulation to determine if it "is rationally related to a legitimate state interest."  See City of Cleburne, 473 U.S. at 440; Gavin v. Branstad, 122 F.3d 1081,

1090 (8th Cir. 1997) ("Because neither a fundamental right nor a suspect classification is at issue here, we apply rational basis review"), cert. denied, 524 U.S. 955 (1998);[13] see also, Phillips 320 F.3d at 848 (holding Petitioner must either establish that he was a member of a protected class or that a fundamental right was violated, or "he must show that 'similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest.'")) (quoting Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998)).

For starters, Petitioner is not alleging a suspect classification, a protected class or a fundamental Constitutional right. In any event, the Eighth Circuit has held that prisoners are not a protected class. Murray v. Dosal, 150 F.3d 814 (8th Cir. 1998). And again, no fundamental Constitutional right attaches to a discretionary privilege such as early release privileges. The "language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release." Zacher, 202 F.3d at 1041 (citing Bellis v.

---

[13] "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." City of Cleburne, 473 U.S. at 440 (citations omitted). This rule gives way, and a heightened review will be employed, when a statute classifies by race, alienage, national origin or gender, or impinges on a personal right protected by the Constitution; however, differential treatment based on age is not subjected to heightened scrutiny. Id. at 440-442. "These factors [race, alienage, national origin, gender, or impingement on a personal right protected by the Constitution] are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy-a view that those in the burdened class are not as worthy or deserving as others. For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, these laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. Id. (citations omitted)." See also Gavin 122 F.3d at 1090 ("We generally presume legislation to be valid, and we will uphold it against an equal protection challenge if its classifications are rationally related to a legitimate governmental interest. Legislation that employs a suspect classification or impinges on a fundamental constitutional right merits stricter scrutiny and will survive only if it is narrowly tailored to serve a compelling governmental interest.") (citations omitted).

<u>Davis</u>, 186 F.3d 1092, 1094 8th Cir. 1999)); <u>see</u> <u>also</u> <u>Lopez</u>, 531 U.S. at 241 ("When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's condition of confinement and to reduce his term of imprisonment."); <u>Grove</u>, 245 F.3d at 746 ("Section 3621(e)(2)(B) provides the BOP with discretionary authority.").

Additionally, Petitioner has not shown that he was treated differently than other similarly situated inmates. Petitioner has not pointed to any other individual or group of individuals serving the same sentence for the same crime who were deemed by the BOP to be eligible for a one-year sentence reduction for completion of RDAP. Finally, even if Petitioner had identified any other similarly situated inmate, he has not demonstrated that the allegedly unequal treatment was the result of intentional or purposeful discrimination.

Having failed to make this threshold showing, Petitioner's claim of violation of equal protection must fail.[14]

### 4. Request For Preliminary Injunction

In the last ground for his second claim, Petitioner contended that the Court must issue a preliminary injunction where the BOP has issued a Program Statement whose terms exceed the BOP's authority. Pet. Mem., p. 64. Petitioner has also filed a motion seeking a preliminary injunction of the BOP's utilization of the program statement. Motion for Emergency Hearing and Appointment of Counsel [Docket No. 2].

---

[14] As evidenced by the discussion in Section III.D.1, <u>supra</u>, the Court also finds that the BOP has articulated a rational basis for its treatment of inmates based on length of sentence.

Four factors must be considered in determining whether to grant temporary injunctive relief: (1) whether the movant is likely to succeed on the merits, (2) whether the movant would otherwise suffer irreparable harm, (3) whether the injunctive relief would cause harm to others, and (4) whether an injunction would serve public interests. See Wedow v. City of Kansas City, Mo., 442 F.3d 661, 676 (8th Cir. 2006); Dataphase Systems Inc. v. C.L. Systems Inc., 640 F2.d 109, 113 (8th Cir. 1981) (en banc). Petitioner has the burden of establishing these factors. Davis v. Francis Howell School Dist., 104 F.3d 204, 205-06 (8th Cir. 1997). Because this Court has determined that Petitioner's claim that the Program Statement exceeds the BOP's authority is without merit, he cannot demonstrate any likelihood of success on his claims. Therefore, no injunctive relief can be awarded.[15]

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **DENIED**.

2. Petitioner's Motion for Emergency Hearing and Appointment of Counsel [Docket No. 2] be **DENIED**.

3. Petitioner's habeas Petition be **DISMISSED WITH PREJUDICE**.

---

[15]    As part of his response to this Court's Order to Show Cause, Petitioner renewed his request for appointment of counsel because he could not come to court. This request is denied not only for the reasons set forth in this Court's Order dated May 20, 2009 [Docket No. 4], but because there is no need for Petitioner to come to court.

Dated:      February 12, 2010

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 26, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.